UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-81384-CIV-ALTMAN

D'ANDRE J. BANNISTER,

    *Petitioner*,

v.

MARK S. INCH,
*Secretary, Florida Department of Corrections*,

    *Respondent*.
_____/

## ORDER

The Petitioner, D'Andre J. Bannister, filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his state-court conviction and sentence in Case No. 02-CF-009204. *See* Petition [ECF No. 1]. After the Magistrate Judge entered an Order to Show Cause, *see* Order to Show Cause [ECF No. 9], the Respondent—Mark S. Inch in his capacity as the Secretary of the Florida Department of Corrections—filed a Response. *See* Response to Order to Show Cause ("Response") [ECF No. 13]. Having carefully reviewed the record, and for the following reasons, the Petition [ECF No. 1] is **DENIED**.

### THE HISTORY

On May 26, 2005—one month before the scheduled trial date, where the State of Florida planned to seek the death penalty—Bannister's then-counsel filed a joint "Agreed Motion to Continue" the case. *See* First Agreed Motion to Continue ("First Continuance Motion") [ECF No. 14-1] at 7–8.[1] In that First Continuance Motion, Bannister's counsel said that "this case is not ready for

---

[1] Bannister's counsel had apparently filed an earlier motion for continuance on August 26, 2004. *See* Reply [ECF No. 16] at 1; State's Response to Motion for Post-Conviction Relief, Nov. 22, 2016 [ECF

trial and additional time is needed to prepare" because of a few pieces of recently discovered forensic evidence, the need to test that evidence, and the State's sudden disclosure of an expert witness. *Id.* at 7. Over the next ten months—from May 2005 to March 2006—defense counsel filed *three more* joint motions to continue. In the second such motion, counsel requested additional time to depose certain witnesses. *See* Second Agreed Motion to Continue ("Second Continuance Motion") [ECF No. 14-1] at 9 (explaining that, "despite many efforts to depose witnesses, there are still several doctors that need to be deposed"). In the third motion, Counsel and the State jointly said that the parties needed more time because they were "trying to negotiate a settlement." Third Agreed Motion to Continue ("Third Continuance Motion") [ECF No. 14-1] at 11. In that same motion, Bannister's lawyer acknowledged that there "has already been a waiver of speedy trial." *Id.* In the fourth motion, counsel asked for more time to review the State's newly listed expert witnesses. *See* Fourth Agreed Motion to Continue ("Fourth Continuance Motion") [ECF No. 14-1] at 13 (requesting a continuance because "[t]he State has listed additional expert witnesses" and acknowledging again that "[t]here has already been a waiver of speedy trial"). After Bannister's counsel withdrew for health reasons, *see* Motion to Withdraw [ECF No. 14-1] at 20, the state trial court appointed a new attorney, Successor Counsel, as counsel of record, *see* Order Allowing Public Defender to Withdraw and Appointing Counsel [ECF No. 14-1] at 22.

Long story short, on June 24, 2010, after the parties' plea discussions broke down, a state jury found Bannister guilty of second-degree murder, aggravated child abuse, and kidnapping. *See* Jury Verdict [ECF No. 14-1] at 25–26. On July 13, 2010, the trial court entered a judgment of guilt. *See* Judgment [ECF No. 14-1] at 29. Four months later, on November 23, 2010, the court sentenced Bannister to life in prison without the possibility of parole. *See* Sentencing Order [ECF No. 14-1] at 31–32. Bannister appealed, *see* Notice of Appeal [ECF No. 14-1] at 36–37, but the Fourth DCA

---

No. 14-1] at 225. But, for reasons that aren't entirely clear, that earlier motion appears nowhere in the State's exhibits. *See generally* Continuance Motions [ECF No. 14-1] at 7–16.

affirmed, *see Bannister v. State*, 132 So. 3d 267 (Fla. 4th DCA 2014). When Bannister sought discretionary review in the Florida Supreme Court, *see* Notice of Appeal to Invoke Discretionary Jurisdiction [ECF No. 14-1] at 164–65, that court declined jurisdiction (November 24, 2014). *See Bannister v. State*, 157 So. 3d 1040 (Fla. 2014). Bannister never petitioned for a writ of certiorari to the Supreme Court of the United States.

More than one year later, on December 9, 2015, Bannister filed a Motion for Postconviction Relief under FLA. R. CRIM. P. 3.850. *See* Motion for Postconviction Relief [ECF No. 14-1] at 204–20. Almost two years after that, on March 17, 2017, the trial court entered an "Order Denying Defendant's Motion for Postconviction Relief In Part, Granting In Part, and Requiring an Evidentiary Hearing In Part" ("First Postconviction Order") [ECF No. 14-1] at 232–38. The trial court also vacated Bannister's sentence on the charge of aggravated child abuse. *See* Order Vacating Defendant's Sentence [ECF No. 14-1] at 240. And, on May 24, 2019, the trial court entered its now-operative Second Amended Judgment. *See* Second Amended Judgment [ECF No. 14-1] at 242.

Two weeks later, on June 5, 2019, the trial court entered its Final Order Denying Defendant's *Pro Se* Motion for Postconviction Relief After Evidentiary Hearing ("Final Order Denying Postconviction Relief") [ECF No. 14-1] at 244–56. The Petitioner appealed that order, *see* Notice of Appeal [ECF No. 14-1] at 258–59, but (again) the Fourth DCA affirmed, *see Bannister v. State*, 299 So. 3d 1060 (Fla. 4th DCA 2020), and its mandate issued on August 28, 2020, *see* Mandate [ECF No. 14-2] at 48. This time, Bannister didn't appeal to the Florida Supreme Court. *See generally* Docket, *Bannister v. State*, No. 4D19-1797 (Fla. 4th DCA 2020).[2]

Bannister didn't file this Petition until August 20, 2020. *See* Petition at 1.

---

[2] Available at: http://onlinedocketsdca.flcourts.org/DCAResults/CaseDocket?Searchtype=Case+Number&Court=4&CaseYear=2019&CaseNumber=1797.

# TIMELINESS

"[A] person in custody pursuant to the judgment of a State court" has one year to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)–(D).

A limitations defense, though, is waivable. *See Wood v. Millyard*, 666 U.S. 463, 474 (2012) (finding that the state waived the limitations defense by its "decision not to contest the timeliness of Wood's petition" and noting that, "after expressing its clear and accurate understanding of the timeliness issue, [the state] deliberately steered away from the question and towards the merits of Wood's petition" (cleaned up)); *Day v. McDonough*, 547 U.S. 198, 211 (2006) ("[N]othing in the record suggests that the State 'strategically' withheld the [limitations] defense or chose to relinquish it"); *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) ("[T]he State has never indicated a desire to waive the limitations bar."). In our case, the Respondent has conceded the timeliness of Bannister's Petition. *See* Response at 6 ("[T]he petition appears to be timely."). And the Court sees no reason to question this concession. *See generally Day*, 547 U.S. at 209–10 (holding that "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition"

and adding that, "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions"). We'll assume, in short, that the Petition is timely.

## EXHAUSTION

Habeas petitioners must exhaust their claims *before* presenting them in a federal habeas petition. *See* 28 U.S.C. § 2254(b)–(c); *see also Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) ("Generally, in order to bring a § 2254 habeas corpus petition in federal court, a petitioner must exhaust all state court remedies."). In other words, each of the Petition's claims must have been "fairly presented" to the state courts for adjudication. § 2254(b)(1)(A); *see also Rhines v. Weber*, 544 U.S. 269, 274 (2005) ("AEDPA preserved *Lundy*'s total exhaustion requirement[.]").

Despite this exhaustion requirement, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." § 2254(b)(2). This Court, in other words, has discretion to "skip over the procedural bar issues" when a claim "is due to be denied." *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011). Indeed, courts can "deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010). Consistent with that authority, we decline to address the Respondent's position that the Petitioner has failed to exhaust his single claim because we find that the Petition is meritless in any event.

## STANDARD OF REVIEW

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Some of the most restrictive of these limits are found in § 2254(d), which authorizes federal courts to grant habeas relief from a state-court judgment *only if* the state court's

5

decision *either* (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Despite this high bar, federal courts are "free" to review a "claim *de novo* rather than affording deference to the state court's determination" if that review would result in a denial. *Dallas v. Warden*, 964 F.3d 1285, 1298 (11th Cir. 2020) (collecting cases).

## THE LAW

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*,

6

466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, however, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

### ANALYSIS

In his only claim for relief, the Petitioner criticizes the state trial court for rejecting his argument that his "trial counsel was ineffective when he failed to assert Petitioner's statutory and his United States constitutional right to speedy trial when asked by Petitioner[.]" Petition at 5. This claim is meritless.

"In addition to a broad constitutional right to speedy trial under the Sixth Amendment, Florida law includes a specific procedural right to speedy trial, set forth in FLA. R. CRIM. P. 3.191." *Dillard v. Sec'y, Fla. Dep't of Corr.*, 440 F. App'x 817, 819 (11th Cir. 2011) (citing *State v. Nelson*, 26 So. 3d 570, 574 (Fla. 2010)). Rule 3.191 contains two separate speedy trial provisions. "Under Rule 3.191(a), a person charged with a felony must be brought to trial within 175 days of being taken into custody." *Id.* (citing FLA. R. CRIM. P. 3.191(a)). But "[t]his right is not self-executing and requires a defendant to take affirmative action to avail himself of the remedies provided under the statute." *Id.* (citing *Nelson*, 26 So. 3d at 574). The second provision—Rule 3.191(b)—provides for a "Speedy Trial Upon Demand" and states that "every person charged with a crime by indictment or information shall have the right to demand a trial within 60 days, by filing with the court a separate pleading entitled 'Demand for Speedy Trial,' and serving a copy on the prosecuting authority." FLA. R. CRIM. P. 3.191(b). By filing this demand, a defendant indicates that he is ready to proceed to trial within 10 days. *See* FLA. R. CRIM. P. 3.191(b)(1)–(2) ("No later than 5 days from the filing of a demand for speedy trial, the court shall hold a calendar call," at which "the court shall set the case for trial to commence at a date no less than 5 days nor more than 45 days from the date of the calendar call").

7

Whichever of these two provisions applies here, "[t]he right to a speedy trial is waived when the defendant or his attorney requests a continuance." *Dillard*, 440 F. App'x at 820 (citing *State v. Reichmann*, 777 So. 2d 342, 365 (Fla. 2000)). This waiver "is binding on the defendant, 'even though done without consulting him and even against the client's wishes.'" *Id.* (quoting *State v. Kruger*, 615 So. 2d 757, 759 (Fla. 4th DCA 1993)); *see also Fayson v. Sec'y, Fla. Dep't of Corr.*, 568 F. App'x 771, 774 (11th Cir. 2014) (finding that "counsel was not deficient for moving for a continuance without Fayson's consent, because scheduling issues are the province of counsel" and holding that "counsel's decision to move for a continuance was not objectively unreasonable under the circumstances because counsel still had 23 depositions to conduct 5 days before trial").

In this case, Bannister's lawyer asked for *at least* four—and possibly five—separate continuances.[3] In his First Continuance Motion—labelled an "Agreed Motion to Continue"—counsel asked for more time because "the defense [had] discovered forensic slides of evidence" that needed "testing done by [the Defense's] experts." First Continuance Motion [ECF No. 14-1] at 7. In the Second Continuance Motion—also labelled as an "Agreed Motion to Continue"—the parties said that "there are still several doctors that need to be deposed." Second Continuance Motion [ECF No. 14-1] at 9. Counsel also asked for continuances "to negotiate a settlement," *see* Third Continuance Motion [ECF No. 14-1] at 11, and to review the proposed testimony of the State's "additional expert witnesses," *see* Fourth Continuance Motion [ECF No. 1] at 13. Bannister's "right to a speedy trial" was thus "waived when . . . his attorney request[ed] a continuance[,]" even if that continuance went "against the client's wishes." *Dillard*, 440 F. App'x at 820. And, since Bannister's only claim here is that "trial counsel was ineffective when he failed to assert Petitioner's statutory and his United States

---

[3] As we've said (q.v. note 1), there's some evidence that trial counsel filed an *earlier* motion to continue—though that motion (which would bring the total number of such motions to five) appears nowhere in the record and won't be considered here.

8

constitutional right to speedy trial when asked by Petitioner," Petition at 5, there's not much more to say.

Even if counsel lacked the authority to request these continuances *unilaterally*—that is, without Bannister's consent—Bannister's Petition would still fail because he cannot show that his lawyer acted unreasonably. *See, e.g., Dillard*, 440 F. App'x at 820 ("Dillard has not demonstrated that counsel performed unreasonably, in failing to file a notice of expiration of speedy trial time at Dillard's request, because counsel had previously waived speedy trial in order to take depositions."). Nor could he. It's well-settled that "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Fayson*, 568 F. App'x at 773 (cleaned up) (quoting *Strickland*, 466 U.S. at 690). Defense "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. But "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* at 690.

These four continuance requests—to review evidence, to complete certain necessary depositions, and to negotiate a possible settlement—were all very much in Bannister's best interest. The continuances, in fact, were especially important in Bannister's case because he was facing the death penalty. *See* State's Notice of Intent to Seek Death Penalty [ECF No. 14-1] at 5 ("[T]he State of Florida files this Notice of Intent to Seek the Death Penalty in the above styled case."). Counsel cannot be blamed for doing what any reasonable lawyer would have done: taking his time to review all the evidence, explore all settlement options, and depose all the State's witnesses. *Strickland*, 466 U.S. at 690 (referring to trial counsel's strategic decisions as "virtually unchallengeable"); *Waters*, 46 F.3d at 1512 ("We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." (quoting *White*, 972 F.2d at 1220 (cleaned up))).

Nor could Bannister argue that Successor Counsel—the lawyer who appeared after Bannister's initial counsel withdrew for health reasons—should have invoked his speedy trial rights.[4] Again, the initial lawyer's (reasonable) decision to move for these continuances worked a waiver of Bannister's speedy trial rights. *See Dillard*, 440 F. App'x at 820 (holding that a speedy trial waiver is "binding on the defendant"). Since there was thus no speedy trial right for Successor Counsel to invoke, Bannister cannot blame Successor Counsel for doing nothing. *See Pinkney v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.").

In his Reply, Bannister contends (for the first time) that the "motions for continuance by defense counsel" were filed *only* after "Petitioner's speedy time had long since expired on February 13, 2003; before defense counsel filed the first motion for continuance[.]" Reply [ECF No. 16] at 2. For three reasons, this new argument doesn't save Bannister here. *First*, by not advancing this argument in his Petition, *see generally* Petition, Bannister has waived it, *see, e.g.*, *Hamilton*, 680 F.3d at 1319; *In re Egidi*, 571 F.3d at 1163. *Second*, under FLA. R. CRIM. P. 3.191(p)(1), "[n]o remedy [for speedy trial violations] shall be granted to any defendant . . . until the court has made the required inquiry under subdivision (j)." Subdivision (j), in turn, provides that "a pending motion for discharge [for speedy trial violations] shall be granted *unless* it is shown that . . . the failure to hold trial is attributable to the accused, a codefendant in the same trial, or their counsel[.]" FLA. R. CRIM. P. 3.191(j)(2) (emphasis added). The record in this case is clear that, even at the filing of the Fourth Continuance Motion, and especially when counsel submitted his first continuance request—by which time, Bannister says, his speedy trial

---

[4] Bannister, in any case, never makes this argument, which is reason enough to disregard it. *See, e.g.*, *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

clock had already expired—Bannister's lawyer wasn't (remotely) ready for trial. Since the failure to hold the trial earlier was thus attributable to counsel's understandable desire, in a death-penalty case, to parse through *all* the evidence, Bannister's new argument is likewise unavailing.

*Third*, even if Bannister's lawyer had been deficient in failing to insist on a trial date, Bannister cannot show that he was prejudiced by that failure. Had counsel demanded a speedy trial, of course, the trial court could have ordered that Bannister "be brought to trial within 10 days." FLA. R. CRIM. P. 3.191(j)(3). What good would that have done? Counsel's logs reflect that, for years after February of 2003, she was still reviewing witness statements and poring through discovery, conferring with possible defense witnesses, scheduling and taking needed depositions, listening to tapes of medical experts, reviewing those medical experts' many reports, preparing mitigation evidence for sentencing, and "review[ing] [the] status of 60 plus witnesses[.]" Counsel's Time Log [ECF No. 14-2] at 146–71. Even by 2008, in fact, counsel told Bannister that she wasn't ready for trial and warned of the "extremely damaging" testimony of seven doctors and nurses—all of whom were "available to testify" that the child victim "had been abused," "was beaten to death," and suffered "a painful death." Counsel's Status Letter [ECF No. 14-2] at 134–35. We have little difficulty concluding that Bannister would have been ill-served by speeding recklessly towards trial with an unprepared lawyer who hadn't had the chance to review all the State's evidence, depose all the State's witnesses, or explore all possible avenues for resolution—all with the death penalty looming, like the Sword of Damocles, over the proceedings.[5] Bannister, in short, hasn't shown that, but for counsel's unwillingness to demand a speedy trial, his case would have turned out more favorably. *See Porter*, 558 U.S. at 40 ("[A] defendant

---

[5] The State didn't waive its intent to seek the death penalty until 2010. *See* Final Order Denying Postconviction Relief at 245 ("Ms. [Evelyn] Ziegler remained as trial counsel until February 2010 when she withdrew due to health problems. This Court then appointed Gregg Lerman to represent the Defendant as lead counsel [in 2010]. In exchange for Mr. Lerman's commitment to be ready for trial within 90 days of appointment, the State waived the death penalty.").

11

is prejudiced by his counsel's deficient performance if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (cleaned up)).

## MOTION FOR LEAVE TO FILE SUPPLEMENTAL CLAIMS

Bannister has also moved to file two supplemental claims, both of which are unrelated to the initial Petition.[6] *See* Motion for Leave to File Supplemental Petition ("Motion") [ECF No. 19]; *see also* Petition. Rule 15(a) provides that the "court should freely give leave when justice so requires." FED. R. CIV. P. 15(a). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Nevertheless, the granting or denial of leave to amend lies within the discretion of the trial court and is subject to reversal only for abuse of discretion." *Moore v. Balkcom*, 716 F.2d 1511, 1526–27 (11th Cir. 1983) (collecting cases).

In the first of these proposed supplemental claims—which Bannister describes as a "newly discovered evidence" claim—Bannister chastises the state trial court for refusing to hold an evidentiary hearing on whether certain "files went missing." Proposed Supplemental Petition ("Supp. Pet.") [ECF No. 19-1] at 8. Here, Bannister appears to be referring to a missing "*pro se* petition for writ of habeas corpus in the alternatively motions withdraw the counsel." Supp. Pet. [ECF No. 19-1], Ex. A at 13–14 (errors in original). We don't *really* know what this motion asked for because, during Bannister's postconviction case, it disappeared from the court's file, so "[a]ll we know is what it was titled, which is motion to withdraw lead counsel." *Id.* at 14. But a "state court's failure to hold an evidentiary hearing on a petitioner's [state postconviction filing] is not a basis for federal habeas relief." *Anderson v. Sec'y,*

---

[6] Although Bannister represented that "the Respondent has no objection to the filing of the supplemental 2254 Petition for Writ of Co=pus," Motion at 2, that isn't true. As the Respondent has explained: "Respondent **does object** to Petitioner's motion to file a supplemental petition." Response at 2.

12

*Fla. Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006); *see also Carroll v. Sec'y, Fla. Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("[D]efects in state collateral proceedings do not provide a basis for habeas relief."). Since this first proposed supplemental claim is thus futile as a matter of law, we needn't incorporate it into the Petition or consider it further. *See* FED. R. CIV. P. 15(d) ("[T]he court *may*, on just terms, permit a party to serve a supplemental pleading[.]" (emphasis added)); *see also Foman*, 371 U.S. at 182 (noting that Rule 15(a) doesn't require a court to grant leave to amend when the amendment would be futile).

The second proposed supplemental claim fares no better. In this second claim, Bannister argues that his life sentence is "constitutionally impermissible" and violates the "Eighth Amendment" because "he received a life sentence[ ] without the possibility of parole, a greater sentence than he would have received for the greater offense of First Degree Murder[.]" Supp. Pet. at 9–10. As with the first proposed claim, we needn't grant Bannister leave to amend to add this second proposed claim because any such amendment would be futile. *See Moore*, 716 F.2d at 1527 (finding that district court's order to deny, on "grounds of futility," the habeas petitioner's request for leave to amend constituted "sufficient reasons within its discretion justifying its decision").

Under Florida law, second-degree murder carries a maximum possible sentence of life imprisonment. FLA STAT. § 782.04(2) (providing that "murder in the second degree" shall be "punishable by imprisonment for a term of years not exceeding life"). And, "[i]n 1983, Florida abolished parole for most new crimes." *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). In fact, as the Florida Supreme Court put it, "[Florida's] Legislature has consistently demonstrated its opposition to parole, abolishing this practice for non-capital felonies in 1983, for first-degree murder in 1994, for all capital felonies in 1995, and for *any* sentence imposed under [Florida's] Criminal Punishment Code in 1997." *Horsley v. State*, 160 So. 3d 393, 407 (Fla. 2015) (emphasis added); *see also* FLA. STAT. § 921.002 (1997) ("The provisions of chapter 947, relating to

13

parole, shall not apply to persons sentenced under the Criminal Punishment Code."). "Because Florida has abolished its parole system, a life sentence [in Florida] gives a defendant *no possibility of release unless he is granted executive clemency.*" *Graham v. Florida*, 560 U.S. 48, 57 (2010) (emphasis added & cleaned up), *as modified* (July 6, 2010).

The inapplicability of Florida's parole system aside, proving that a sentence is unconstitutionally disproportionate is no easy feat. "In non-capital cases, the Eighth Amendment does not require strict proportionality but rather forbids only extreme sentences that are grossly disproportionate to the crime." *Pate v. Warden*, 822 F. App'x 960, 962 (11th Cir. 2020) (cleaned up). "In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) (cleaned up). And, when defendants violate laws that are designed to protect children, a trial court is justified in imposing a more onerous sentence. *See, e.g.*, *Hong v. Sec'y, Fla. Dep't of Corr.*, 478 F. App'x 648, 652 (11th Cir. 2012) ("[T]he courts have recognized the importance of protecting children, and the seriousness of violating laws designed to protect children.").

In our case, Bannister was found guilty of kidnapping and violently murdering a child who was under the age of 13. *See generally* Second Amended Judgment. Florida law thus permitted precisely the sentence Bannister received: life without the possibility of parole. *See* FLA STAT. § 782.04(2). And the grisly facts of Bannister's case more than justify that sentence. Bannister's child victim—his stepson, *see* Testimony of Pameka McNeal [ECF No. 15-7] at 56–57—died two days after Bannister "beat[ him] to death" with a broom that may have been "jammed into [the child's] anus[.]" Trial Testimony of Dr. Reinard Motte [ECF No. 15-13] at 129–33; *see also* Trial Testimony of Phillip Colaizzo [ECF No. 15-14] at 25 ("It is my opinion that because of the multiple number of injuries that this child sustained, the head injury, the injury to the chest, the injury to the abdomen and all of the surface injuries as well, the muscle injuries to the torso, that these were the result of being beaten.").

The trial evidence also suggested that the child victim was beaten with several plastic chairs. *See* Testimony of Pameka McNeal [ECF No. 15-7] at 76 ("Q. Again, showing you State's 68, a close-up of the red chair, was that chair broken when you left for work on August 7th of 2002? A. No. Q. And, again, State's Number 67, the yellow chair in this photograph, you can see that it is broken and missing a leg, and on August the 7th, 2002, when you left for work, was that chair broken or in that condition? A. No."). But, instead of seeking medical attention for his stepson's injuries, Bannister callously *prevented* his wife from calling for an ambulance. *See id.* at 91 ("I grabbed the [landline] phone to call the ambulance, and [Bannister] was like, you can't call the ambulance and snatched the phone from me and unplugged it, and he was like, [your son is] gone wake up . . . I tried to get my cell phone out of the living room, and [Bannister] came in there behind me and he, like, took the phone out and loosened, like, the battery from the phone."). This is precisely the kind of conduct for which life sentences are reserved.

To this, Bannister responds that his sentence is disproportionate because he could have gotten less for what he considers a more serious crime, like first-degree murder. *See* Supp. Pet. at 9–10 ("[Bannister] received a life sentence[ ] without the possibility of parole, a greater sentence than he would have received for the greater offense of First Degree Murder[.]").[7] But Bannister's crimes were heinous and more than justified the life sentence he received. That some other trial judge, in different circumstances, might impose the same sentence on a first-degree murderer is thus neither here nor there.[8] Again, the statute Bannister was convicted of violating countenanced a life sentence—without parole—and the facts of his case support the trial judge's view that Bannister deserves to spend the

---

[7] Bannister's central premise—that he got a *harsher* sentence than a first-degree murderer would have received—is also wrong in any event. Under Florida law, a first-degree murderer cannot receive anything less than the same life sentence Bannister is serving. *See* FLA. STAT. § 775.082(1)(a).
[8] No less irrelevant is the possibility that some other trial judge, when confronted with our very same facts, may have given Bannister a *lesser* sentence.

15

rest of his life in prison. Bannister, in sum, cannot show that his sentence was "grossly disproportionate" to the severity of the crimes he committed. *Pate*, 822 F. App'x at 962; *see also Hong*, 478 F. App'x at 652 ("[T]he courts have recognized the importance of protecting children, and the seriousness of violating laws designed to protect children.").

His Motion to Supplement is, therefore, **DENIED**.

## EVIDENTIARY HEARING

We also see no need to hold an evidentiary hearing on the Petition. *See Shriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## CERTIFICATE OF APPEALABILITY

A COA is appropriate only where the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because no "reasonable jurists" would find the Court's assessment "debatable," the Petitioner has failed to show that he's entitled to a COA.

\*\*\*

Having carefully reviewed the record and the governing law, the Court hereby

**ORDERS AND ADJUDGES** that the Petition [ECF No. 1] is **DENIED**. A COA is **DENIED**. Any pending motions, including any requests for an evidentiary hearing, are **DENIED**. All deadlines are **TERMINATED**. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 23rd day of June 2021.



**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: D'Andre J. Bannister
D37377
Charlotte Correctional Institution
Inmate Mail/Parcels
33123 Oil Well Road
Punta Gorda, FL 33955
PRO SE

Matthew Steven Ocksrider
Office of the Attorney General
Criminal Appeals
1515 North Flagler Drive
Suite 900
West Palm Beach, FL 33401
(561)837-5016

Noticing 2254 SAG Broward and North
Email: CrimAppWPB@MyFloridaLegal.com